**SO ORDERED.**

**SIGNED this 10 day of September, 2009.**



_____
ROBERT E. NUGENT
UNITED STATES CHIEF BANKRUPTCY JUDGE

_____

OPINION DESIGNATED FOR ON - LINE AND PRINT PUBLICATION

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| JUDY CLARIECE COOK, | ) | Case No. 09-10064 |
| | ) | Chapter 13 |
| | ) | |
| Debtor. | ) | |
| | ) | |

## ORDER REGARDING VALUATION

Creditor GMAC objected to confirmation of Debtor Judy Clariece Cook's Chapter 13 Plan for failing to comply with the requirements of 11 U.S.C. § 1325(a)(5)(B)(ii) because it undervalued GMAC's claim, which is secured by Debtor's 2006 Saturn Vue ("the Vehicle").[1] The Court

---

[1] Dkt. 17. All future references to "Section" or "§" refer to the Bankruptcy Code, Title 11 U.S.C. unless otherwise noted. The Vehicle is not a "hanging paragraph" 910-vehicle under § 1325(a)(9)(*).

1

confirmed Debtor's Plan subject to the allowance of GMAC's secured claim.[2]

The Court conducted a valuation hearing on August 19, 2009.[3] Debtor appeared in person and by counsel Michael Studtmann. GMAC appeared by Nelson Mitten and Creath Pollack. The Chapter 13 trustee, Laurie B. Williams, appeared in person. Debtor and the parties' respective auto appraisers testified. The parties stipulated Debtor's Exhibits 1-4 and GMAC's Exhibits 1-5 into evidence. At the hearing, the parties urged different valuation benchmarks under § 506(a)(2). GMAC maintained that the proper valuation was as of the date of petition and that its collateral should be valued at retail without regard for any costs of sale or reconditioning. Debtor maintained that the proper valuation was as of the hearing date that value is determined and that various repair and reconditioning costs should be deducted from retail value.

A.   Factual Background

Debtor filed her voluntary Chapter 13 petition and Chapter 13 Plan on January 14, 2009. In her Plan, Debtor proposed to pay GMAC $9,280.00 on its claim of $15,829.00. The Plan provided for monthly payments of $284.42 to GMAC. Both parties presented the testimony of automobile sellers in support of their value contentions. The Court was generally impressed with the abilities of both experts and found their presentations helpful and credible.

Debtor's expert, Alan Rupp, inspected and appraised the Vehicle on August 13, 2009, when it had approximately 76,830 miles on it. Mr. Rupp testified that the Vehicle's NADA retail value, as of the date of his appraisal, is $12,800 after reconditioning and its NADA trade-in value is $9,400

---

[2] Order Confirming Chapter 13 Plan Subject to Valuation, Dkt. 31.

[3] This is a core proceeding over which this Court has jurisdiction pursuant to 28 U.S.C. §§ 157(b)(2)(B) and 1334.

2

after reconditioning.[4] He estimated that it would cost approximately $1,425 to recondition the vehicle: $200 to repair paint chips, $275 to repair scrape on rear bumper, $125 to remove interior stains, $250 to fix windshield chips/stars, $450 for inspection and fluid changes, and $125 for detailing. He appraised the Vehicle's net retail value at $11,375 and its net trade-in value at $7,975.[5] Mr. Rupp did not know what the NADA values were in January of 2009, the petition date.

GMAC's expert, Alan Moore, inspected the Vehicle on May 17, 2009 when it had 76,319 miles on it. He noted the Vehicle has a couple of paint scuffs and was a little dirty but these problems could be fixed for less than $180. He did not note any defects in the windshield. He described the Vehicle as being in good condition overall. Mr. Moore's report indicates that the Vehicle's NADA "Clean Retail" value in May 2009 is $12,400. He added another $600 to the Vehicle's value due to the high demand for used cars in this economy, the popularity of the Vehicle's make and model, special features (sunroof, Honda engine, etc.), gas mileage, and its overall condition. Mr. Moore concluded that the Vehicle's retail value in May 2009 was $13,000 plus the value of the balance of the extended service contract. He testified that the difference in NADA value from January to May, 2009 was a decrease of $1,200, making the Vehicle's retail value in January 2009 $14,200 plus the value of the remaining extended service contract. Mr. Moore also testified that comparable vehicles would sell for $13,900 to $16,900, but that he had been pressed to find a similar vehicle in the multi-state area.

Mr. Moore assumed that the Vehicle had approximately 60,000 miles on it in January 2009 as this was the figure Debtor had reported in her schedules. At the hearing, Debtor testified that she

---

[4] NADA refers to the National Automotive Dealers Association.

[5] Debtor's Ex. 2 (emphasis added).

3

recently discovered that the mileage in the Vehicle in January was higher than she had previously reported and that it was closer to 69,000 miles.[6] She also testified that this is her personal vehicle and uses it to go to and from work, shopping, and other places. She testified that Saturn East of Wichita advised they would trade in the Vehicle for $7,500 to $8,000 and sell it for $11,800.[7]

B.  Analysis

Section 1325(a)(5) specifies that the holder of an allowed secured claim must receive, as of the effective date of the plan, an amount that is not less than the amount of its allowed secured claim. Unless the security in question is a purchase money car acquired within 910 days of the filing date, determining the value of the collateral securing the claim is governed by § 506. That section generally provides that an allowed secured claim is allowed to the extent of the value of the collateral and that the value shall be determined in light of the purpose of the valuation and the proposed disposition or use of the property. BAPCPA added § 506(a)(2) which provides as follows:

> If the debtor is an individual in a case under chapter 7 or 13, such value with respect to personal property securing an allowed claim shall be determined based on the replacement value of such property *as of the date of the filing of the petition* without deduction for costs of sale or marketing. With respect to property acquired for personal, family, or household purposes, replacement value shall mean the price a retail merchant would charge for property of that kind considering the age and condition of the property *at the time value is determined*. (Emphasis added).

The language of this subsection, specific to chapter 7 and 13 cases, raises two issues that directly bear on the disposition of this and many other like cases. First, the Court must determine as of what date the property is to be valued. Second, if the property is used for personal, family, or

---

[6] Debtor testified that she had located a receipt for the purchase of tires that recorded the mileage shortly after the beginning of the year 2009. This testimony was credible.

[7] Debtor's Ex. 4.

4

household purposes, the Court must decide how to adjust the retail merchant price considering the age and condition of the property.

The debtor argues that since she uses the Vehicle for personal needs, the second sentence controls and that the Vehicle's value should be determined as of the date of the valuation hearing as set out in Judge Berger's decision in *In re Feagans*.[8] GMAC argues that the collateral should be valued as of the date of the filing of the petition notwithstanding the verbiage contained in the second sentence. The parties also differ as to what factors drive the value of the Vehicle.

This Court has not had an opportunity to consider the temporal provisions of § 506(a)(2). Before BAPCPA, courts disagreed on the date for fixing the value of collateral in Chapter 13 cases.[9] Some courts held that the value of collateral for Chapter 13 plan confirmation purposes should be determined as of the date of the petition because the amount of the creditor's claim is fixed at the date of the petition by § 502.[10] Other courts fixed the value of collateral at some later date, some using the date of confirmation, others the date that proceedings to determine value are initiated, and several at the date of the valuation hearing.[11] Yet other courts relied on the phrase "effective date

---

[8] Case No. 06-20049, slip op. (Bankr. D. Kan. Oct. 18, 2006) (Berger, J.) (Memorandum and Order Denying Confirmation of Chapter 13 Plan).

[9] 2 Keith M. Lundin, *Chapter 13 Bankruptcy*, 3d Ed. §107.1 (2000 & Supp. 2004) (collection of cases).

[10] *Id.*

[11] *Id., see also Winston v. Chrysler Fin. Corp. (In re Winston)*, 236 B.R. 167, 171 (Bankr. E.D. Pa. 1999) (crucial time at which the car must be evaluated is the date of confirmation of the plan); *In re Jones*, 219 B.R. 506, 508-09 (Bankr. N.D. Ill. 1998) (date of confirmation is proper date for valuing car); *Virginia Nat'l Bank v. Jones*, 5 B.R. 736 (Bankr. E.D. Va. 1980) (collateral values fixed on the date that proceedings to determine value are initiated); *In re Ibarra*, 235 B.R. 204, 213 (Bankr. D. P.R. 1999) (determine present value as of the date of the hearing of confirmation); *In re Arnette*, 156 B.R. 366, 368 (Bankr. D. Conn. 1993) (value should be determined as of the effective date of the plan); *Blobaum v. Blobaum*, 34

of the plan" in § 1325(a)(5)(B)(ii) to value property as of the effective date. With respect to chapter 7 and 13 cases, BAPCPA changed all that with the addition of § 506(a)(2).

Section 506(a)(2) appears to contain two temporal benchmarks. Personal property that was *not* acquired for personal, family or household purposes is to be valued "as of the date of the filing of the petition." In the second sentence of the subsection, however, property acquired for personal, family or household purposes is to be valued "at the time value is determined." *Feagans* concluded that personal use collateral is valued as of the time of the hearing while other personal property should be valued as of the petition date. One other court has held to the contrary. In *In re Morales,* the court held that the second sentence of § 506(a)(2) requires retail value to be determined as of the petition date, stating:

> . . . a full view of the interaction between the first and second sentences of § 506(a)(2) favors valuation as of the petition date. By its own terms, the second sentence only establishes a specific definition of the general term "replacement value" to be used for certain property. The second sentence thus functions to provide a definition for a single term in the first sentence. * * * This definition does not alter the requirement that courts not deduct for costs of sale or marketing, nor should it alter the valuation date established in the first sentence.[12]

The *Morales* court stated that this approach establishes a single, static date of valuation for all personal property in individual Chapter 7 and Chapter 13 cases and generally encourages the parties to determine value as promptly as possible.[13]

This Court respectfully disagrees with *Morales* and concludes that the valuation of the Vehicle should be "as of the time value is determined." To hold otherwise would require the Court

---

B.R. 962 (Bankr. W.D. Mo. 1983) (same); *In re Klein*, 10 B.R. 657 (Bankr. E.D.N.Y. 1981) (same).

[12] 387 B.R. 36, 47 (Bankr. C.D. Cal. 2008).

[13] *Id.*

6

to ignore Congress' differing choice of words in the two sentences and render the last few words of the second sentence of § 506(a)(2) superfluous. In addition, it is difficult for the Court to consider the "age and condition" of the property as of the filing date at a later valuation hearing. As Judge Lundin writes in his treatise:

> Logically, if the drafters intended property acquired for personal, family or household purposes to be valued at the petition, they would have used the same language in the second sentence as in the first sentence of new § 506(a)(2), or said nothing at all about timing in the second sentence. A convincing argument emerges that property acquired for personal, family or household purposes is valued as of whatever time value is determined and all other personal property is valued at the petition.[14]

The Court notes that this view accords with that expressed in *Collier* and by other courts.[15]

Having determined the appropriate valuation date for the Vehicle, the Court turns to the requisite method of valuation. In 1997, the Supreme Court set the standard for valuing property retained by debtors in *Associates Commercial Corp. v. Rash*.[16] In *Rash*, the Supreme Court determined that, under § 506(a), the value of property retained when the debtor attempts to "cram-down" a creditor's claim in a chapter 13 case is the "cost the debtor would incur to obtain a like asset for the same proposed use" or "replacement value."[17] The Supreme Court did not mandate that replacement value was to be retail, wholesale value, or some other value. The bankruptcy courts

---

[14] 5 Lundin, *supra* note 9, § 450.1 at 450-4 (2000 & Supp. 2007-1).

[15] 4 *Collier on Bankruptcy* ¶ 506.03[7][c], p. 506-76.1 (rev. 15th ed. 2006) (explaining that for property governed by sentence 2 of § 506(a)(2), the date value is determined "will often be the date of confirmation") and *In re Cheatham*, 2007 WL 2428046, at *2 (Bankr.W.D.Mo. June 19, 2007) (using value as of hearing date and noting that courts must use "the value at the time the determination is being made").

[16] 520 U.S. 953, 963 (1997)

[17] *Id*. at 965.

7

were left to "ascertain[] replacement value based on the evidence presented " by considering the type of debtor and the nature of the property involved.[18] In footnote 6, the *Rash* court specifically noted that creditors should not receive "portions of the retail price, if any, that reflect the value of items the debtor does not receive when he retains his vehicle, items such as warranties, inventory storage, and reconditioning." [19]

Congress enacted § 506(a)(2) to codify *Rash*, incorporating the "replacement value" concept for chapter 7 and 13 cases, but modifying that concept as well. The first sentence of § 506(a)(2) directs that in chapter 7 and 13 cases involving personal property, replacement value is to be determined without regard to the cost of sale or marketing. Because reconditioning prepares the vehicle for sale, it is a cost of sale or marketing that may not be deducted. This departs from the *Rash* standard that allowed reduction of the value of collateral by subtracting the value of items that the debtor did not receive like warranties and reconditioning.

However, the second sentence of § 506(a)(2) defines the replacement value of any property that was acquired for personal, family, or household purposes, as "the price a retail merchant would charge for property of that kind considering the age and condition of the property at the time value is determined." The "age and condition" language suggests that the cost of reconditioning may be deducted from the merchant retail value of personal use property in order to account for depreciation and wear.[20]

---

[18] *Id.*, fn. 6.

[19] *Id.*

[20] 5 Lundin, *supra* note 14, at 450-3 ("With respect to property acquired for personal, family, or household purposes, ... new § 506(a)(2) does not preclude adjustments for costs of sales or marketing."). *See also Feagans* at 5.

8

Here, both appraisers employed the NADA website to establish the retail and trade-in value of the Vehicle. "Clean Retail" is defined as–

> No mechanical defects and passes all necessary inspections with ease; Paint, body and wheels have minor surface scratching with a high gloss finish and shine; Interior reflects minimal soiling and wear, with all equipment in complete working order; Vehicle has a clean title history; Vehicle *will need minimal reconditioning* to be made ready for resale.[21]

It strikes the Court that NADA Clean Retail, as so defined, is in most cases the best starting point for valuing personal use vehicles under § 506(a)(2)'s second sentence. While the Court recognizes that some vehicles will be sufficiently unique (low mileage, rare or classic) to require in depth appraisal and evaluation, courts valuing most vehicles in chapter 7 and 13 cases could safely begin with this well-accepted and readily available source.[22] Therefore, the Court holds that, in this case, NADA Clean Retail, adjusted for needed mechanical, body, and interior repairs, as well as for other *Rash* items that the debtor does not receive (like reconditioning or detailing), is the best approximation of value for personal use vehicles subject to § 506(a)(2) treatment.[23]

Here, debtor's appraiser, Mr. Rupp, included a copy of the August 13, 2009 NADA Clean

---

[21] *See* GMAC's Ex. 3, p. 3 (emphasis added).

[22] The Court notes that the Tenth Circuit Bankruptcy Appellate Panel has affirmed a bankruptcy court's use of another readily-available source, www.kbb.com, *see Midwest Regional Credit Union v. De Anda-Ramirez (In re De Anda-Ramirez)*, 359 B.R. 794 (10th Cir. BAP 2007). In *DeAnda*, the court disdained the use of Kelly Blue Book "Retail," which assumes that the vehicle has been fully reconditioned and accounts for the dealer's cost of advertising and sale, does not account for the age and condition of a vehicle and is limited to vehicles in excellent condition. The court preferred KBB "Private Party" value, which is based on the age and condition of the vehicle and does not consider reconditioning cost. This Court expresses no opinion about the use of the KBB website for § 506 valuation purposes.

[23] None of this is to suggest that the Court will not entertain proposed valuations based on sources other than the NADA Guide. Counsel's use of a readily-available and recognized source of vehicle valuation may better serve the economies of most cases than the employment and presentation of expert reports and testimony.

9

Retail and Clean Trade-in summaries with his report. Clean Retail was, after adjustment for mileage and accessories, $12,800. GMAC's appraiser, Mr. Moore, included a summary from May 12, 2009 that indicated clean retail at $12,400. Because both sentences of § 506(a)(2) refer to "replacement" or "retail," the Court disregards the trade-in or wholesale values. Although his report was generated later, Mr. Rupp's NADA retail value is higher. The Court notes that Rupp is affiliated with a dealer and that his summary is based on the "NADA Official Used Car Guide" for the "Midwest Used Car Guide, August, 2009." Mr. Moore's summary appears to be a print-out of "consumer values" from [www.nadaguides.com](www.nadaguides.com) and is not specific to region. The Court notes that, at the bottom of this print, NADA states, "the consumer values on *nadaguides.com* are based on the Consumer edition of the N.A.D.A. Official Used Car Guide®, and should not be utilized for industry purposes." No testimony explained the difference between prices reported in the consumer and dealer versions of the Guide. In any event, because the Court believes that the appropriate point in time for valuation in this case is as of the hearing date, it begins with the August 13, 2009 clean retail price contained in Mr. Rupp's report.

Based on NADA's definition of "Clean Retail," the Court deducts the cost of services necessary to bring the car to a state of "no mechanical defects,""minor surface scratching" on the outside, "minimal soiling and wear" on the interior, and "all equipment in complete working order." Therefore, the Court deducts from Mr. Rupp's "clean retail" of $12,800 windshield repair of $250, interior stain removal of $125, and body paintwork of $475. The Court also deducts the inspection and fluid charge of $450 and the detail charge of $125. A debtor acquiring a like Vehicle with the noted defects would receive none of these items, each of which is the result of the vehicle's age and affects its condition. The Court therefore concludes that a retail merchant would charge $11,375

10

for a like vehicle that needed these repairs and reconditioning.

C.	Conclusion

Accordingly, the Trustee is directed to determine whether the debtor's plan is rendered unfeasible by the result of this Order and, if it is, the Trustee shall move to set aside the confirmation order previously entered in this case. Alternatively, debtor shall be granted 10 days in which to present a modified plan that considers and treats GMAC's allowed secured claim in the amount set out above or provides for the vehicle's surrender to the creditor.

# # #

11